**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES QUAID, CHELA MCCLAIN, PAULINA HERNANDEZ, and SUSAN BIDWELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. _____ |
| | ) | Hon. _____ |
| v. | ) ) | |
| DATA AXLE, INC., a Delaware Corporation | ) ) | |
| *Defendant*. | ) ) | |

## CLASS ACTION COMPLAINT

1.  Plaintiffs James Quaid, Chela McClain, Paulina Hernandez and Susan Bidwell bring this class action on their own behalf and also on behalf of all others similarly situated ("Class Members") against Defendant Data Axle, Inc. Plaintiffs and Class Members had (and continue to have) their identities used by Defendant in its advertisements without Plaintiffs' or Class Members' written consent, in violation of Illinois and California law.

### THE PARTIES

2.  Plaintiff James Quaid is a resident of Clinton County, Illinois.

3.  Plaintiff Chela McClain is a resident of Cook County, Illinois.

4.  Plaintiff Paulina Hernandez is a resident of Cook County, Illinois.

5.  Plaintiff Susan Bidwell is a resident of Kern County, California.

6.  Defendant Data Axle, Inc. is a privately-held Delaware corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over Defendant because: (i) it transacts business in this District; (ii) it has substantial aggregate contacts in this District; (iii) it engaged, and continues to engage in, conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this District.

8.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d) & 1367 because: (i) this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; (ii) there are 100 or more class members; and (iii) some members of the class are citizens of states different from the Defendants.

9.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in this District. Additionally, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendant.

## BACKGROUND

### I.     The Illinois Right of Publicity Act

10.     In 1999, the Illinois Legislature enacted the Right of Publicity Act ("IRPA"), codified at 765 ILCS 1075/1 *et seq.* As recognized by the Legislature, "The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity." 765 ILCS 1075/10.

11.     Section 30 of IRPA provides that a person "may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the person … or their authorized representative." 765 ILCS 1075/30(a).

12.     IRPA defines "Person" to mean "a natural or juristic person." 765 ILCS 1075/5.

2

13.     "Commercial purpose" is defined to mean "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

14.     "Identity" means "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.*

15.     Defendants who violate IRPA "may be liable for either of the following, whichever is greater: (1) actual damages, profits derived from the unauthorized use, or both; or (2) $1,000." 765 ILCS 1075/40. IRPA further provides, "Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act." *Id.*

## II.     California Civil Code Section 3344

16.     Like IRPA, California Civil Code Section 3344 prohibits businesses from using a consumer's identity to advertise a product, good or service without the consumer's consent. In pertinent part, the statute provides, "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent … shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Code. Civ. Pro. § 3344(a).

17.     Defendants who violate this provision "shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the

3

unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." *Id.*

### III.     The Data Axle Websites

18.     Defendant owns and operates two websites at issue in this lawsuit. Defendant's primary website, www.data-axle.com, is targeted to large organizations with complex data needs. A second website, www.dataaxlegenie.com, is designed for small and medium-sized businesses looking to generate leads to grow their customer base.

19.     As described in more detail below, both websites use consumers' identities in a free preview or "free trial" to entice prospective customers to purchase a paid subscription. On the main data-axle.com site, Defendant claims its database includes 275 million U.S. consumers and more than 300 consumer attributes.[1] More specifically, Defendant states, "Our consumer database is compiled from data provided by more than 100 sources including real estate, tax assessments, voter registrations, utility connections, bill processors and more, giving businesses the ability to build marketing campaigns based on hundreds of data attributes that are updated in real time."[2]

20.     The dataaxlegenie.com website similarly claims that purchasing access to its database "gives you access to millions of business leads and consumer leads for all your sales and marketing needs."[3]

---

[1] "Consumer Data," available at https://www.data-axle.com/our-data/consumer-data/.
[2] *Id.*
[3] https://www.dataaxlegenie.com/about-us/salesgenie/.

IV.    The "Free Trial" Teaser

    A.    The Data Axle Main Website

21.    Data Axle's primary database is accessed on the data-axle.com website. To entice prospective customers to purchase a paid subscription that offers expansive searching of the data-axle.com database, Defendant offers a "free trial" account pursuant to which consumers' personally identifiable information – including that of Plaintiffs and Class Members – is available to be searched and downloaded. Specifically, upon accessing the data-axle.com website, a prospective customer is able to sign up for a free trial membership, entitling the user to 3,000 "credits" which may be used over 30 days.

22.    Upon signing up for a free trial, prospective customers are able to access Defendant's "People" platform, which allows prospective customers to find and filter information about specific individuals. This data is available to prospective customers by searching by specified filters, such as "Identifiers," "Family," "Address," and similar identifying information and attributes, as shown in the image below:



23.     The search function allows the prospective user to search for a wide variety of identifiable information and attributes, such as "First Name," "Last Name," "Gender," "Address," and more, as shown in the following image:



24.     After prospective customers define and submit their search using the relevant filters, they are provided with a blurred list of contacts. In order to retrieve a visible version of the list, the prospective customers must download the records found by expending their free trial credits, and are then provided with a CSV spreadsheet file that contains the desired data.  This data contains sensitive and personal information that is sufficient to identify the particular individuals a prospective customer searched for.

25.     As set forth in detail below, Defendant allows prospective customers using the "free trial" to access Plaintiffs' and Class Members' identifying information, thereby using

6

Plaintiffs' and Class Members' personal information, attributes, and identities to market and advertise a paid subscription to the entire data-axle.com database.

**B.     The Data Axle Genie Website**

26.     The dataaxlegenie.com website has similar functionality, allowing prospective customers to find and filter consumers' identifying information. Upon signing up for a three-day "free trial" account, a prospective customer can "Search for Leads" from the Data Axle Genie landing page, as shown below:



27.     Upon selecting this option, prospective customers are presented with further options, including the ability to search for "U.S. Consumers + Auto Data":



28.     Selecting this option offers a vast array of search options, including "Geography," "Personal Info," Household Members," "Political Behavior," "Finance," "Automobile," and more:

7



29.     As set forth in detail below, Defendant allows prospective customers using the "free trial" to access Plaintiffs' and Class Members' identifying information, thereby using Plaintiffs' and Class Members' personal information, attributes, and identities to market and advertise a paid subscription to the entire dataaxlegenie.com database.

**V.      Defendant's Use of Plaintiffs' Identities for Commercial Purposes**

30.     Upon expiration of the "free trial" on either data-axle.com or dataaxlegenie.com, the prospective customer is solicited to purchase a subscription. As to both websites, as set forth below, Defendant uses and holds out Plaintiffs' and Class Members' personal information,

attributes, and identities during the "free trial" period to solicit potential customers to purchase subscriptions to the entire Data Axle and Data Axle Genie databases.

**A.      Data Axle Main Website**

31.      Plaintiffs and Class Members are among the 275 million U.S. consumers who are identified on Defendant's main data-axle.com website. A prospective customer is able to access these individuals' identifying information, but downloading the records associated with a particular individual counts against the credits afforded in the "free trial" membership.

**1.      Plaintiff James Quaid**

32.      A search using the "First Name: James," "Last Name: Quaid" and "City: Carlyle" filters in the data-axle.com database, for example, shows one record. The data itself, however, and is only accessible by clicking the "Download Records" button, which specifies that "Downloaded records count against your download limits":



33.      When the prospective customer clicks on "Download Records," they are presented with a screen that summarizes the request, and includes a button to "Request Delivery", as follows:



34.     After clicking the "Request Delivery" button, a file is downloaded to their
computer that opens into a Microsoft Excel spreadsheet. The spreadsheet contains Mr. Quaid's
personally identifiable information, including his name, gender, full address and associated
longitudinal and latitudinal coordinates, and marital status. A partial screenshot of the
downloaded file, split into to two images for ease of reading, follows:



35.     Plaintiff Quaid has never provided consent to Defendant to use his personally
identifiable information to market its Data Axle platform subscriptions to potential customers or
for any commercial purposes.

## 2. Plaintiff Paulina Hernandez

36.     A search using the "First Name: Paulina," "Last Name: Hernandez" and "City: Bridgeview" filters in the data-axle.com database shows one record, again with the data obscured and only accessible by clicking the "Download Record" button, which specifies that "Downloaded records count against your download limits":



37.     When the prospective customer clicks on "Download Records," they are presented with a screen that summarizes the request, and includes a button to "Request Delivery", as follows:

11



38.     After clicking the "Request Delivery" button, a file is downloaded to the prospective customer's computer that opens into a Microsoft Excel spreadsheet. The spreadsheet contains Ms. Hernandez's personally identifiable information, including her name, gender, full address and associated longitudinal and latitudinal coordinates, and marital status. A partial screenshot of the downloaded file, split into to two images for ease of reading, follows:

| first_name | middle_in | last_name | generatio | gender | | labels.ger | family_id | estimated_married | labels.est |
|---|---|---|---|---|---|---|---|---|---|
| Paulina | A | Hernandez | | F | | Female | 9.02E+11 | single | Single |

| street | | suite_des | suite | | mailing_s | city | | state | | labels.sta | postal_code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8800 S Harlem Ave | | Trlr | 1407 | | | Bridgeview | | IL | | Illinois | 60455-1987 |

39.     Plaintiff Hernandez has never provided consent to Defendant to use her personally identifiable information to market its Data Axle platform subscriptions to potential customers or for any commercial purposes.

12

### 3. Plaintiff Sue Bidwell

40.     A search using the "First Name: Sue," "Last Name: Bidwell" and "City:

Bakersfield" filters in the data-axle.com database shows one record, again with the data obscured

and only accessible by clicking the "Download Record" button, which specifies that

"Downloaded records count against your download limits":



41.     When the prospective customer clicks on "Download Records," they are

presented with a screen that summarizes the request, and includes a button to "Request

Delivery", as follows:



42.     After clicking the "Request Delivery" button, a file is downloaded to the prospective customer's computer that opens into a Microsoft Excel spreadsheet. The spreadsheet contains Ms. Bidwell's personally identifiable information, including her name, gender, and full address and associated longitudinal and latitudinal coordinates. A partial screenshot of the downloaded file follows:



| first_name | middle_in | last_name | generatio | gender | labels.ger | street | suite_des | suite | mailir | city | state | labels.stat | postal_code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sue | | Bidwell | | F | Female | 6400 Euclid Ave | | | | Bakersfield | CA | California | 93308-2823 |

43.     Plaintiff Bidwell has never provided consent to Defendant to use her personally identifiable information to market its Data Axle platform subscriptions to potential customers or for any commercial purposes.

### 4.     Plaintiff Chela McClain

44.     A search using the "First Name: Chela," "Last Name: McClain" and "City: Chicago" filters in the data-axle.com database shows one record, again with the data obscured

and only accessible by clicking the "Download Record" button, which specifies that

"Downloaded records count against your download limits":



45.     When the prospective customer clicks on "Download Records," they are

presented with a screen that summarizes the request, and includes a button to "Request

Delivery", as follows:



46.     After clicking the "Request Delivery" button, a file is downloaded to the prospective customer's computer that opens into a Microsoft Excel spreadsheet. The spreadsheet contains Ms. McClain's personally identifiable information, including her name, full address and associated longitudinal and latitudinal coordinates, and marital status. A partial screenshot of the downloaded file, split into multiple rows for ease of reading, follows:

| first_nam | middle_in | last_name | generatio | gender | labels.ger | family_id | estimated_married | labels.est |
|-----------|-----------|-----------|-----------|--------|------------|-----------|-------------------|------------|
| Chela | | McClain | | | | 2.43E+09 | single | Single |

| street | | suite_des | suite | mailing_s | city | state | labels.state | postal_code |
|--------|--|-----------|-------|-----------|------|-------|--------------|-------------|
| 1354 S Morgan St | | Apt | 302 | | Chicago | IL | Illinois | 60608-1452 |

47.     Plaintiff McClain has never provided consent to Defendant to use her personally identifiable information to market its Data Axle platform to potential customers or for any commercial purposes.

### 5.     Use of Plaintiffs' Personal Information for Commercial Purposes

48.     Plaintiffs Quaid, Hernandez, Bidwell and McClain have never provided consent to Defendant to use their personally identifiable information for commercial purposes on the data-axle.com website.

49.     After a prospective customer has used up the credits available in the "free trial" membership in order to access and view Plaintiffs' and Class Members' personally identifiable information or the trial period elapses, the "Request Delivery" button is "grayed out," or deactivated, and the prospective customer is no longer able to request a download of consumers' data, as shown in the following screenshot (using Plaintiff Quaid as an example):

16



50.     In order to access additional data and database records, the prospective customer must go to the "Account" tab, which advises that they have used their 3000 "credits" (or have zero days remaining during the "free trial" period), immediately followed by a hyperlink that states "Contact Sales":



51.     This hyperlink leads a directs prospective customers to contact the Data Axle sales team in order to purchase a database subscription. Indeed, the only way by which a prospective customer can access additional data and database records is to thereafter purchase a paid subscription.

52.     The purpose behind Defendant's use of the "free trial" pages on the data-axle.com platform showing Plaintiffs' and Class Members' names and other identity attributes is singular: to entice users to purchase a paid subscription, which will allow the customer to thereafter conduct further searches and access records on the 275 million consumers stored in the data-axle.com database.

**B.      Data Axle Genie Website**

53.     Plaintiffs and Class Members are among the millions of consumers who are identified on Defendant's dataaxlegenie.com website. Defendant enables a prospective customer to access this information during a three-day "free trial," which Defendant uses to market its paid Data Axle Genie database subscription to prospective customers.

**1.      Plaintiff James Quaid**

54.     After navigating to Defendant's dataaxlegenie.com search page, a prospective customer running a search for "James Quaid Illinois" is presented with a screen disclosing the personal information of several individuals bearing that name, including Plaintiff Quaid:



55.     As can be seen from the screenshot, Plaintiff Quaid is the third listed name, and Defendant discloses his name, address, age, income, and home value. On the same page, Defendant advertises its paid subscription in a bright green box at the top center of the page, which advises how many days are left in the free trial and solicits the prospective customer to either click on a "Subscribe Online" hyperlink or to call a toll-free sales number in order to purchase a subscription.

56.     Plaintiff Quaid has never provided consent to Defendant to use his personally identifiable information to market its Data Axle Genie platform to potential customers or for any commercial purposes.

**2.    Plaintiff Paulina Hernandez**

57.     After navigating to Defendant's dataaxlegenie.com search page, a prospective customer running a search for "Paulina Hernandez Illinois" is presented with a screen disclosing the personal information of several individuals bearing that name, including Plaintiff Hernandez:



58.     As can be seen from the screenshot, Plaintiff Hernandez is the 18th listed name, and Defendant discloses her name, address, age, and income. On the same page, Defendant advertises its paid subscription in a bright green box at the top center of the page, which advises how many days are left in the free trial and solicits the prospective customer to either click on a "Subscribe Online" hyperlink or to call a toll-free sales number in order to purchase a subscription.

59.     Plaintiff Hernandez has never provided consent to Defendant to use her personally identifiable information to market its Data Axle Genie platform to potential customers or for any commercial purposes.

### 3.     Plaintiff Sue Bidwell

60.     After navigating to Defendant's dataaxlegenie.com search page, a prospective customer running a search for "Sue Bidwell California" is presented with a screen disclosing the personal information of several individuals bearing that name, including Plaintiff Bidwell:



61.     As can be seen from the screenshot, Plaintiff Bidwell is the first listed name, and Defendant discloses her name, address, income, and home value. On the same page, Defendant advertises its paid subscription in a bright green box at the top center of the page, which advises

how many days are left in the free trial and solicits the prospective customer to either click on a "Subscribe Online" hyperlink or to call a toll-free sales number in order to purchase a subscription.

62.     Plaintiff Bidwell has never provided consent to Defendant to use her personally identifiable information to market its Data Axle Genie platform to potential customers or for any commercial purposes.

### 4.      Plaintiff Chela McClain

63.     After navigating to Defendant's dataaxlegenie.com search page, a prospective customer running a search for "Chela McClain Illinois" is presented with a screen identifying Plaintiff McClain:



64.     As can be seen from the screenshot, Plaintiff McClain is the only listed name, and Defendant discloses her name, address, age, and income. On the same page, Defendant advertises its paid subscription in a bright green box at the top center of the page, which advises how many days are left in the free trial and solicits the prospective customer to either click on a "Subscribe Online" hyperlink or to call a toll-free sales number in order to purchase a subscription.

65.     Plaintiff McClain has never provided consent to Defendant to use her personally identifiable information to market its Data Axle Genie platform to potential customers or for any commercial purposes.

5.    **Use of Plaintiffs' Personal Information for Commercial Purposes**

66.    As is shown on the screenshots above, Defendant solicits prospective customers to purchase a paid subscription to the Data Axle Genie database throughout the three-day free trial via a hyperlink encouraging users to "Subscribe Online" and a toll-free phone number.

67.    In addition, when a prospective customer reaches the end of the three-day trial, upon logging in they are directed to a page offering to extend the free trial by "connecting you with a knowledgeable expert," who on information and belief is a sales professional. The page also touts the "Subscription Benefits" available for purchase, with a hyperlink button to "Packages & Pricing":



68.    Clicking on the "Packages & Pricing" hyperlink displays the various subscription plans available for purchase to conduct further searches for and gain premium access to database records, consumers' personal information, and other related products and services:



69.     As with the main data-axle.com platform, the "free trial" feature on the dataaxlegenie.com platform is designed solely to entice prospective customers to purchase a paid subscription. In doing so, Defendant uses consumers' personally identifiable information, attributes, and identities – including Plaintiffs' and Class Members' – to advertise, market, and sell its product.

70.     Neither Plaintiffs nor Class Members provided Defendant with written consent to use their names, personal information, or identities for the commercial purpose of marketing premium subscriptions to its database.

71.     Had Defendant requested Plaintiffs' consent, Plaintiffs would not have provided it. As detailed above, Defendant uses Plaintiffs' and Class Members' identities to advertise the

for-profit paid subscriptions. By doing so, Defendants violate the IRPA and California Code of Civil Procedure 3344.

72.     Defendant purposefully subjects itself to jurisdiction in this Court by knowingly using the identities of Illinois residents to advertise paid subscriptions on the data-axle.com and dataaxlegenie.com websites. Indeed, this lawsuit arises directly from Defendant's practice of acquiring information sufficient to identify Illinois residents, and then using that information to advertise paid subscriptions to its users and potential customers. In addition, Defendants directly advertise and sell paid subscriptions to all of their users, including Illinois residents.

73.     Neither Plaintiffs nor Class Members are or have ever been a Data Axle customer. Plaintiff and Class Members have no relationship with Data Axle whatsoever. Nonetheless, Data Axle uses their identities to sell its products, in direct violation of Illinois and California law.

## VI.    Class Action Allegations

74.     Plaintiff seeks certification of the class set forth herein pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Specifically, Plaintiff seeks class certification of all claims for relief herein on behalf of a class defined as follows: All current and former Illinois and California residents who are not and never have been Data Axle users, and whose personal information and identities are incorporated into records available to prospective Data Axle customers as part of a "free trial" which advertises a Data Axle paid subscription. Plaintiffs are the proposed class representatives for the Class.

75.     Plaintiffs reserve the right to amend the Class definition upon completion of discovery when the contours and the parameters of the class become more apparent.

76.     Excluded from the class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

77.    **Ascertainability:** The proposed Class is readily ascertainable because it is defined using objective criteria so as to allow Class Members to determine if they are part of the Class. Further, the Class can be readily identified through records maintained by Defendant.

78.    **Numerosity (Rule 23(a)(1)):** The Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class Members as herein identified and described is not known, but given Defendants' claim that its database include up to 275 million consumers, it is anticipated that the class will contain at least thousands of Illinois and California residents.

79.    **Commonality (Rule 23(a)(2)):** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

> a.  Whether Data Axle uses Plaintiffs' and Class Members' names and identities to market and advertise products and services for its own commercial benefit;
>
> b.  Whether Data Axle obtained written consent from Plaintiffs and the Class prior to using their identities in marketing and advertisements promoting its platforms as required by 765 ILCS 1075/30;

    c.   Whether Data Axle obtained consent from Plaintiffs and the Class prior to using their identities in marketing and advertisements promoting its platforms as required by California Code of Civil Procedure 3344;

    d.   Whether Defendant's activities and practices referenced above constitute a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*;

    e.   Whether Defendant's activities and practices referenced above constitute a violation of the California Code of Civil Procedure 3344;

    f.   Whether Plaintiffs and Class Members sustained damages as a result of Defendants' activities and practices referenced above, and if so, in what amount;

    g.   What constitutes appropriate injunctive relief to ensure Plaintiffs' privacy and intellectual property rights are not used without their consent by Defendant for commercial purposes.

80.    **Typicality (Rule 23(a)(3))**: Plaintiffs' claims are typical of the claims of Class Members, because among other things, Plaintiffs and Class Members sustained similar injuries as a result of Defendant's uniform wrongful conduct and their claims all arise from the same events and wrongful conduct by Defendant.

81.    **Adequacy (Rule 23(a)(4))**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class and Class Members, and Plaintiffs have retained counsel experienced in complex class action and privacy litigation to prosecute this case on behalf of the Class.

82.    **Predominance & Superiority (Rule 23(b)(3))**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action

26

under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class Members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiffs is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

83. **Final Declaratory or Injunctive Relief (23(b)(2)):** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

84. **Particular Issues (Rule 23(c)(4))**: Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Illinois Right to Publicity Act, 765 ILCS 1075/1

85. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

27

86.     Defendant has used, and continues to use, Plaintiffs' and Class Members' names (and other identifying information) to sell paid subscriptions on the data-axle.com and dataaxlegenie.com websites.

87.     Plaintiffs and Class Members have never consented to Defendant's use of their identities for commercial purposes.

88.     By using Plaintiffs' and Class Members' identities for commercial purposes, Defendant violates the Illinois Right of Publicity Act.

89.     On information and belief, Defendant has knowledge of the Illinois Right of Publicity Act and the protections afforded to Plaintiffs' and Class Members' identities set forth therein. Despite such knowledge, Defendant has and continues to infringe on Plaintiffs' and Class Members' privacy rights as alleged herein, thereby violating IRPA. Defendant's continued violation of IRPA despite its knowledge of its requirements demonstrates that Defendant's violations of IRPA are willful.

90.     Under IRPA, Plaintiffs and Class Members are entitled to (1) an injunction requiring Defendant to cease using Plaintiffs' and Class Members' names and any attributes of their identities to advertise its products and services; (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiffs' and Class Members' names and identities) or statutory damages of $1,000.00 per violation, (3) and award of punitive damages for Defendant's willful violations of IRPA, and (4) an award of costs and reasonable attorneys' fees. 765 ILCS 1075/40-55.

91.     As a result of Defendant's misuse of Plaintiffs' and Class Members' identities without compensating them or obtaining their consent, Plaintiffs and Class Members have suffered economic damages and injury to their intellectual property and privacy rights.

Accordingly, Plaintiffs and Class Members have suffered actual damages resulting from Defendant's violations of IRPA alleged herein.

92.     Absent injunctive relief, Plaintiffs and Class Members will suffer irreparable harm in the form of continued violations of the privacy rights embodied in IRPA, for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Violation of California Code of Civil Procedure 3344

93.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

94.     Defendant has used, and continues to use, Plaintiffs' and Class Members' names (and other identifying information) to sell paid subscriptions on the data-axle.com and dataaxlegenie.com websites.

95.     Plaintiffs and Class Members have never consented to Defendant's use of their identities to advertise and sell Defendant's products.

96.     By using Plaintiffs' and Class Members' identities for purposes of advertising or selling, or soliciting purchases of paid subscriptions to Defendant's data-axle.com and dataaxlegenie.com websites, Defendant violates California Code of Civil Procedure 3344.

97.     On information and belief, Defendant has knowledge of California Code of Civil Procedure 3344 and the protections afforded to Plaintiffs' and Class Members' identities set forth therein. Despite such knowledge, Defendant has and continues to infringe on Plaintiffs' and Class Members' privacy rights as alleged herein, thereby violating California Code of Civil Procedure section 3344. Defendant's continued

violation of Section 3344 despite its knowledge of its requirements demonstrates that Defendant's violations are oppressive and malicious.

98.     Under Section 3344, Plaintiffs and Class Members are entitled to (1) an injunction requiring Defendant to cease using Plaintiffs' and Class Members' names and any attributes of their identities to advertise its products and services; (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiffs' and Class Members' names and identities) or statutory damages of $750.00 per violation, (3) and award of punitive damages for Defendant's oppressive and malicious violations of Section 3344, and (4) an award of costs and reasonable attorneys' fees. Cal. Code Civ. P. 3344(a).

99.     As a result of Defendant's misuse of Plaintiffs' and Class Members' identities without compensating them or obtaining their consent, Plaintiffs and Class Members have suffered economic damages and injury to their intellectual property and privacy rights. Accordingly, Plaintiffs and Class Members have suffered actual damages resulting from Defendant's violations of California Code of Civil Procedure section 3344 alleged herein.

100.     Absent injunctive relief, Plaintiffs and Class Members will suffer irreparable harm in the form of continued violations of the privacy rights embodied in California Code of Civil Procedure section 3344, for which there is no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1. Certify the class as defined above, appointing James Quaid, Paulina Hernandez, Sue Bidwell, and Chela McClain as class representatives, and appointing their counsel as class counsel;

2. Declare that Defendant's actions described herein constitute a violation of the Illinois Right of Publicity Act;

3. Declare that Defendant's actions described herein constitute a violation of California Code of Civil Procedure section 3344;

4. Award temporary, preliminary and permanent injunctive relief prohibiting Defendant from continuing to violate the Illinois Right of Publicity Act;

5. Award temporary, preliminary and permanent injunctive relief prohibiting Defendant from continuing to violate California Code of Civil Procedure section 3344;

6. Award the greater of actual damages, including the profits derived from the unauthorized use of Plaintiff's and Class Members' identities, or statutory damages of $1,000.00 for each violation of the Illinois Right of Publicity Act;

7. Award the greater of actual damages, including the profits derived from the unauthorized use of Plaintiff's and Class Members' identities, or statutory damages of $750.00 for each violation of California Code of Civil Procedure section 3344;

8. Award punitive damages;

9. Award Plaintiff and Class Members' their reasonable litigation expenses and attorneys' fees;

10. Award pre- and post-judgment interest at the highest rate authorized by law; and

11. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues for which a jury trial is allowed.

Dated: August 30, 2023                                    Respectfully Submitted,

JAMES QUAID, PAULINA HERNANDEZ, SUE BIDWELL, and CHELA MCCLAIN, individually and on behalf of a Class of similarly situated individuals

By:     /s/ Thomas M. Hanson
        *One of Plaintiffs' Attorneys*

Jon Loevy
Michael I. Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Plaintiffs and the Putative Class*

32